E-FILED
Tuesday, 05 April, 2022  03:44:57 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION**

| | | |
|---|---|---|
| BRIAN MAGNUSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:21-cv-04142 |
| | ) | |
| EXELON CORPORATION, a Publicly | ) | Hon. Sara Darrow |
| Traded Company, and EXELON | ) | Magistrate Judge Jonathan E. |
| GENERATION COMPANY, LLC, | ) | Hawley |
| | ) | |
| Defendants. | ) | |

**DEFENDANT CONSTELLATION ENERGY GENERATION,
LLC'S[1] MEMORANDUM OF LAW IN SUPPORT OF RULE 12(b)(6)
MOTION TO DISMISS PLAINTIFF'S "SECOND FEDERAL CLAIM:
DISCRIMINATION IN VIOLATION OF THE SARBANES OXLEY ACT"**

## I.     INTRODUCTION

In his original Complaint, Plaintiff asserted claims under the whistleblower protection

provisions of the Energy Reorganization Act, 42 U.S.C. §5851 ("ERA"), based on his alleged

reports of *nuclear safety and regulatory concerns* about the Quad Cities Nuclear Generating

Station ("Quad Cities Station") to ExGen management and the Nuclear Regulatory Commission

("NRC") made from April 2015 to November 2016. Plaintiff did not allege in the original

Complaint that any of his nuclear safety reports implicated securities or shareholder fraud or any

other fraud within the scope of the Sarbanes-Oxley Act, 18 U.S.C. §1514A ("SOX").

---

[1] On February 1, 2022, Defendant Exelon Corporation ("Exelon") separated Constellation Energy Corporation ("Constellation") and its consolidated subsidiaries, including Exelon Generation Company, LLC, from Exelon Corporation by distributing all shares of Constellation stock to Exelon's shareholders. At that time, Exelon Generation Company, LLC changed its name to Constellation Energy Generation, LLC. Form 10-K Annual Report for Constellation Energy Corporation for Year Ended December 31, 2021, p. 6 (75e4ce2d-05b5-4529-b9af-0fa2cf24f997 (constellationenergy.com). Plaintiff has referred to Exelon Generation Company, LLC as "ExGen" in all of his pleadings. For ease of reference, we will refer to Constellation as "ExGen" in this Memorandum.

Plaintiff recently filed a Supplemental Complaint alleging that he was subjected to additional adverse action beginning in July 2019 and, more specifically, in June and July 2020. (First Supplemental Complaint for Damages and Injunctive Relief ("Supp. Compl."), Dkt. #79, ¶¶68-78). For the first time, he alleges that his previously-pled reports of *nuclear safety concerns* also are protected activity under SOX. Plaintiff also adds a new claim based on his alleged exporting of "important regulatory information from his company email account to his personal email in order to provide it to his attorneys and the Nuclear Regulatory Commission (NRC), U.S. Department of Labor (DOL), and state regulators." (Supp. Compl., ¶43.)

The Supplemental Complaint does not state a SOX claim that can survive a motion to dismiss. A SOX claim must allege that Plaintiff disclosed what he subjectively *and* reasonably believed to be mail fraud, bank fraud, securities fraud, or a violation of any rule or regulation of the Securities and Exchange Commission ("SEC"), or any provision of federal law relating to fraud against shareholders. 18 U.S.C. §1514A(a)(1). And under controlling Seventh Circuit authority, to establish an objectively reasonable belief that there has been shareholder fraud, Plaintiff must show that the information he disclosed at least approximates the basic elements of a claim of securities or shareholder fraud. *Verfuerth v. Orion Energy Systems, Inc.*, 879 F.3d 789, 793-94 (7th Cir. 2018). The Supplemental Complaint does not come close to satisfying this standard.

Everything that Plaintiff allegedly reported or disclosed to ExGen or government regulators, as set forth in the Supplemental Complaint, related specifically to **safety issues** that allegedly violated NRC rules, regulations, orders, and/or guidelines – **not** to any kind of **securities or shareholder fraud**. (Supp. Compl., ¶¶17, 18-30, 32, 33, 34, 25-37, 38 and 39-40.) In fact, the word "fraud" does not appear anywhere in the 159-paragraph Supplemental Complaint, other than in paragraph 110, which merely quotes text from SOX. Furthermore, the

allegations in the Supplemental Complaint do not permit even a reasonable inference that any of the information Plaintiff allegedly exported to his personal email was about shareholder fraud, rather than his alleged nuclear safety concerns, or that any subjective belief Plaintiff may have held regarding SOX-related fraud was objectively reasonable. Plaintiff's safety-related concerns are not protected by SOX as a matter of law. Allowing Plaintiff's deficient SOX claim to proceed would violate the language and purpose of SOX. It also would expose publicly-held companies, and especially nuclear licensees, to potential SOX liability every time an employee complains about alleged safety violations, even if they have nothing to do with the kind of financial and accounting practices and shareholder fraud that SOX was intended to prohibit. The SOX claim should, therefore, be dismissed.

## II.   <u>PLAINTIFF'S CLAIMS OF PROTECTED ACTIVITY</u>

The allegations in Plaintiff's original Complaint, as incorporated into the Supplemental Complaint, assert that beginning in April 2015, Plaintiff engaged in protected activity by reporting to ExGen management and the NRC ***nuclear safety concerns and regulatory issues*** that he believed violated various ***NRC rules, regulations, orders, and/or guidelines.*** (Supp. Compl., ¶¶ 17, 18-30, 32, 33, 34, 35-37, 38, 39-40.) Each of the allegedly protected disclosures related only to alleged nuclear safety and NRC requirements. For example:

- Paragraph 17 refers to alleged "safety and regulatory violations" of Technical Specifications Plaintiff reported to the NRC;

- Paragraph 19 refers to alleged practices that were "actually or potentially unlawful in the nuclear environment under NRC rules, regulations, orders and/or guidelines";

- Paragraphs 21 and 22 refer to Plaintiff's reporting an alleged directive that was "actually or potentially contrary to NRC rules and regulations";

- Paragraph 23 refers to conduct that allegedly was "contrary to NRC rules and standards mandating ExGen to ensure a Safety Conscious Work Environment ("SCWE")";

- Paragraph 27 refers to Plaintiff documenting his "nuclear safety concerns" regarding an "actual or potential violation of 10 CFR Parts 50 and 54" of the NRC's regulations;

- Paragraph 28 refers to Plaintiff reporting concerns about "actual or potential regulatory violations including under 10 CFR 50.36 Technical Specifications, and Appendix A and B to Part 50";

- Paragraph 29 refers to Plaintiff's filing his "SCWE" and "nuclear safety" concerns with the NRC;

- Paragraph 32 refers to Plaintiff identifying "several nuclear safety concerns and potential noncompliance with regulations";

- Paragraph 33 refers to Plaintiff identifying and reporting concerns that he reasonably believed "implicated nuclear safety and actual or potential regulatory violations," and that he reported to the NRC;

- Paragraph 34 refers to "an actual or potential regulatory violation" that Plaintiff reported to the NRC;

- Paragraphs 35 to 37 refer to Plaintiff allegedly reporting to ExGen and the NRC "actual or potential regulatory violations" under the NRC regulations that threatened "the health and safety of the public";

- Paragraph 38 refers to Plaintiff reporting conditions that he allegedly believed to be "actual or potential" violations of NRC regulations; and

- Paragraph 39 refers to Plaintiff reporting to ExGen "a violation of 10 CFR Part 55" of the NRC's regulations.

In the original Complaint, Plaintiff asserted only ERA claims based on these allegations. He did not claim that any of his reports or disclosures implicated securities fraud or SOX. But in the Supplemental Complaint, Plaintiff now alleges that these same reports and disclosures of nuclear safety and NRC regulatory issues "indicated that Exelon made false claims to the Illinois legislature for passage of the Future Energy and Jobs Bill ["FEJB"]" and "implicated significant financial, regulatory and political consequences which will threaten the ability to operate Quad Cities Station for another 10 years." (Supp. Compl., ¶¶ 44-45.) Plaintiff asserts that passage of

the FEJB "favorably influenced Exelon Corporation's perceived shareholder value and actual

stock price (EXC)." (*Id*., ¶ 46.) Plaintiff also alleges that he engaged in protected activity by

exporting information related to his reports and disclosures from his company email to his

personal email to provide to his attorneys, the NRC, DOL, and state regulators. (*Id*., ¶ 43.)

## III.    THE RULE 12(b)(6) STANDARD

To survive a Rule 12(b)(6) motion, a complaint must "state a claim to relief that is

plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell. Atl. Corp. v*

*Twombly*, 550 U.S. 544, 570 (2007)); *Katz-Crank v. Haskett,* 843 F.3d 641, 646 (7th Cir. 2016).

A complaint satisfies this standard when its factual allegations "raise a right to relief above the

speculative level." *Twombly*, 550 U. S. at 555-56; *see also Swanson v. Citibank, N.A.*, 614 F.3d

400, 404 (7th Cir. 2010) ("[P]laintiff must give enough details about the subject matter of the

case to present a story that holds together."). When deciding a Rule 12 motion to dismiss, the

court takes all facts in the plaintiff's favor, but may disregard  conclusory allegations that merely

recite the elements of a claim.  *Katz-Crank* at 646 (citing *Iqbal*, 556 U.S. at 662, 663).

## IV.    PLAINTIFF FAILS TO SUFFICIENTLY ALLEGE A SOX VIOLATION OR THAT HE REPORTED ANY SUCH VIOLATION

### A.    A SOX Claim Must Plead That the Plaintiff Disclosed Securities Fraud and Had An Objectively Reasonable Belief Such Fraud was Occurring

SOX was enacted in 2002 "'[t]o safeguard investors in public companies and restore trust

in the financial markets following the collapse of Enron Corporation.'" *Digital Realty Trust., Inc.*

*v. Somers*, 583 U.S. ___, 138 S.Ct. 767, 200 L. Ed.2d 15 (2018) (quoting *Lawson v FMR LLC*,

571 U.S. 429, 432 (2014)). SOX furthers this purpose by making it unlawful for a SOX-covered

employer to "discharge, demote, suspend, threaten, harass, or in any other manner discriminate

against an employee" who lawfully acts "to provide information, cause information to be

provided, or otherwise assist in an investigation regarding any conduct which the employee

reasonably believes constitutes" mail fraud, bank fraud, securities fraud, or a violation of "any

rule or regulation of the Securities Exchange Commission, or any provision of Federal law

relating to fraud against shareholders," so long as the assistance is provided to a person with

investigative authority. 18 U.S.C. §1514A(a)(1); *Harp v. Charter Communications, Inc.*, 558

F.3d 722, 723 (7th Cir. 2009). The employee must have a subjective belief that the conduct he is

reporting violates one of the SOX-listed laws and that belief must be objectively reasonable.

*Verfuerth,* 879 F.3d at 793-94; *Harp*, 558 F.3d at 723. And the plaintiff must plead not only that

he engaged in SOX-protected whistleblowing, but also that the employer knew about it and that

the SOX-protected whistleblowing was a contributing factor in some adverse action taken by the

employer against the plaintiff. *Harp*, 558 F.3d at 723.

   In *Verfuerth*, the Seventh Circuit set out several fundamental principles that a SOX

"whistleblower" must satisfy to state a valid claim – and that Plaintiff cannot satisfy. *First*, the

Court stated that SOX protects only "employees who reveal evidence of certain types of fraud,

such as securities fraud or wire fraud." 879 F.3d at 793. It rejected Verfuerth's claim because

"the practices about which he complained – attorney overbilling, intellectual property disputes,

conflicts of interest, and violations of internal company protocol – are not 'fraud' within the

meaning of [SOX]." *Id*. *Second*, the conduct the plaintiff disclosed must be "so significant that

its nondisclosure could constitute securities or shareholder fraud." *Id*. at 794. Verfuerth failed to

meet this standard because "it is far from obvious that the conduct of concern to Verfuerth comes

anywhere near the level of materiality needed to support a plausible claim of fraud." *Id.* In

making that finding, the Court noted that "'[t]o have an objectively reasonable belief there has

been shareholder fraud, the complaining employee's theory of such fraud must at least

approximate the basic elements of a claim of securities fraud ...  includ[ing] material

misrepresentation or omission, scienter, [shareholder] loss, and [causation].'" *Id*. (quoting *Day v.*

*Staples, Inc.*, 555 F.3d 42, 55-56 (1st Cir. 2009)); *see also Hill v. Komatsu Am. Corp.*, 2015 WL 5162129 at *4 (N.D. Ill. 2015). *Third*, the Court rejected Verfuerth's attempt to cure his "obvious" failure to allege he disclosed securities fraud "by artfully recharacterizing his disputes with the board" to assert that "he was not simply complaining about the board's managerial decisions, but rather was (implicitly) telling board members that the failure to disclose his grievances to [defendant's] shareholders amounted to securities fraud." 879 F.3d at 793. According to the Court, "[t]his theory stretche[d] the language and purpose of Sarbanes-Oxley beyond what the statute can bear." *Id*.[2]

Other federal courts sitting in Illinois and elsewhere have dismissed SOX claims based on this analysis. For example, in *Bishop v. PCS Admin. (USA), Inc.*, 2006 WL 1460032 (N. D. Ill., May 23, 2006), the plaintiff alleged that her disclosure of her employer's failure to implement certain labor compliance programs was protected under SOX. But the plaintiff did not "support her conclusory contentions with an explanation of exactly how the compliance program with which she disagreed violated §1341 [mail fraud], §1343 [wire fraud], or an SEC regulation related to fraud." *Id*. at *8. The court dismissed the complaint, noting that the "[c]omplaint itself [did] not specifically plead any fraud violation," and that the plaintiff failed to "specifically identify any of the purported false representations to shareholders" or "explain[] the particular statute or regulation that [was] violated." *Id*. at *9. *See also Komatsu*, 2015 WL 5162129, at *4-5

---

[2] *Verfuerth* builds on and confirms other decisions which hold that disclosures and other alleged activities, such as Plaintiff's "export[ing] [of] important regulatory information," are protected by SOX "only when they implicate the substantive law protected in SOX related to fraud against shareholders definitively and specifically." *Portes v. Wyeth Pharm., Inc.*, 2007 WL 2363356 *4 (S.D.N.Y., August 20, 2007) [internal quotations and citations omitted]. Where, as here, Plaintiff's alleged protected activity is "barren of any allegations of conduct that would alert [a defendant] that [the plaintiff] believed the company was violating any federal rule or law related to fraud against shareholders," the reporting is not protected by SOX. *Fraser v. Fiduciary Trust Co., Int'l*, 417 F.Supp.2d 310, 322 (S.D.N.Y. 2006); *see also*, *Livingston v. Wyeth, Inc.,* 2006 WL 2129794 *10 (M.D.N.C., July 28, 2006) ("To be protected under [SOX], an employee's disclosures must be related to illegal activity that, at its core, involves shareholder fraud.").

(plaintiff's generalized complaint about underfunded financial reserves insufficient to state a SOX claim because it did not raise concerns about potential securities or shareholder fraud); *Portes*, 2007 WL 2363356, at *5 (disclosures about alleged violations of regulations governing pharmaceutical manufacturing did not state a SOX claim because they did not suggest a concern about fraud against investors).

### B.   Plaintiff's SOX Allegations Fail to Show He is a Protected Whistleblower

The Supplemental Complaint fails to state a securities fraud-based SOX retaliation claim under the Seventh Circuit's standards in *Verfuerth* and the other cases cited above. Plaintiff does not allege that he *disclosed or reported* securities fraud. As in *Verfuerth*, the Supplemental Complaint is nothing more than Plaintiff's transparent and belated attempt to "artfully recharacteriz[e]" his nuclear safety-related complaints as SOX complaints.

A review of the allegations in the Supplemental Complaint upon which Plaintiff's SOX claim is based shows that he has not even come close to alleging he disclosed the kind of fraud that SOX protects in the way that *Verfuerth*, *Day* and *Bishop* require. The Supplemental Complaint contains no allegations that Plaintiff disclosed what he believed to be shareholder or securities fraud, let alone allegations of disclosures that approximate the basic elements of a claim of securities fraud, including material misrepresentation or omission, scienter, shareholder loss, and causation. In fact, Plaintiff does not allege that he made any actual reports or disclosures other than the *nuclear safety-related* reports to ExGen and the NRC referred to in paragraphs 17-41. But reports of nuclear safety concerns and NRC regulatory violations do not equate to reports of SOX fraud and are not SOX-protected activity.

Indeed, following the same line of analysis as the Seventh Circuit in *Verfuerth*, SOX claims predicated on the reporting of *nuclear safety concerns, like Plaintiff's claims here*, have failed because reporting of such concerns is not SOX protected activity. In *Gauthier v. The Shaw*

*Group, et al.*, 2012 WL 6043012 *5 (W.D. N.C., December 4, 2012), the plaintiff alleged that the defendants falsified reports to conceal the fact that defective steel had been shipped to nuclear reactor sites for use in safety-related applications. The court dismissed the plaintiff's SOX claim because "[e]ven if [d]efendants' conduct constituted fraud, it was not of the kind contemplated by the SOX." *Id*., at *5. As the court held: "the reporting of safety concerns, even where falsification of documents is involved, does not involve SOX." *Id*.[3]

The court in *Gauthier* also concluded that the allegations were insufficient to demonstrate that the plaintiff subjectively believed he was raising concerns about shareholder or securities fraud or that any such belief would have been objectively reasonable. The court found the plaintiff's concerns about fraud in violation of the ERA and NRC regulations showed that he "was subjectively concerned not with securities violations, but [with] lapses under nuclear safety regulations." 2012 WL 6043012, at *5; s*ee also Leak,* 2006 WL 5676804 at *9 (the fact that the complainant "never expressed anything even remotely close to fraud against shareholders to his employer or in his initial pleadings, militates against him having the belief at the time he engaged in the protected activity, and suggests instead that he acquired that belief thereafter."). Plaintiff's attempt to recast his original allegations about nuclear safety shows the same is true here.

Similarly, with respect to the objective reasonableness of the plaintiff's asserted belief, the court in *Gauthier* noted that when internally reporting the alleged violations, the plaintiff "recounted that he 'had obtained information reasonably indicating that [the company] failed to comply with the Atomic Energy Act of 1954 and/or the Energy Reorganization Act of 1974" and

---

[3] The court relied on *Leak v. Dominion Resources Services*, 2006 WL 6576804 *9 (U. S. Dept. of Labor, May 12, 2006), which held that "'falsification of documents that may or may not evidence a violation of' the PSIA [the Pipeline Security Improvement Act, which was enacted to improve and regulate pipeline safety,] is not a fraud on the shareholders in the sense of what SOX was promulgated to protect – fraud pertaining to corporate accounting and financial practice.'" *Gauthier*, 2012 WL 6043012, at *5.

that "'he was required by the [NRC] to either place a 'stop work' order on [the company] or report the safety concern to the [NRC]." 2012 WL 6043012, at *6. According to the court, "[t]hese allegations illustrate that the concerns [p]laintiff objectively communicated to his employer involved violations of nuclear safety regulations, not securities violations." *Id*., at *6.

As in *Gauthier*, dismissal of Plaintiff's SOX claim is warranted because both Plaintiff's objective words and actions, as well as his subjective beliefs (as they can be discerned from the Supplemental Complaint), reflect that he did not believe at the time he communicated his concerns that he was complaining of—and objectively was not complaining about—conduct that would constitute a fraud against Defendants' shareholders or securities fraud. As shown above, every single specific alleged report or disclosure in the Supplemental Complaint is about a nuclear safety concern. There is no reference to any kind of securities or shareholder fraud in any of those paragraphs. Plaintiff's complaints were clearly aimed only at rectifying conduct that allegedly raised nuclear safety concerns and constituted possible violations of NRC regulations or the ERA.

Plaintiff's conduct demonstrates that he held neither a subjective nor an objectively reasonable belief that his alleged reports involved shareholder fraud. Plaintiff made all of those alleged reports *before* he filed the original Complaint. And the FEJB was passed, allegedly based on false statements Exelon or ExGen made to the Illinois Legislature, *before* the original Complaint was filed. If Plaintiff subjectively and objectively believed that any of his prior disclosures related to securities or shareholder fraud, he would have so alleged and asserted a SOX claim in his original Complaint. That he did not demonstrates that he did not hold those beliefs.[4]

---

[4] And if he did hold such a belief at that time, then he had to file a SOX claim with the DOL within 180 days after the adverse actions alleged in support of the two ERA claims in his original Complaint. *See* 18

Plaintiff's SOX claim is not saved by the addition of new allegations in the Supplemental Complaint (¶¶ 43-46, 68, 111) that try to recharacterize his prior nuclear safety allegations as involving securities fraud. These new allegations, like all of Plaintiff's prior allegations, are based on his NRC-related safety complaints, which never were framed as or intended to provide evidence of any kind of shareholder fraud. Furthermore, the allegations still fail to allege that Plaintiff disclosed what he believed to be shareholder or securities fraud, let alone approximate the basic elements of a claim of securities fraud, including material misrepresentation or omission, scienter, shareholder loss, and causation as *Verfuerth* requires.

The conclusory allegations in paragraph 43 of the Supplemental Complaint related to Plaintiff's allegedly exporting important regulatory information from his company email account to his personal email in order to provide it to his attorneys, the NRC, the DOL, and state regulators, are insufficient to show SOX protected activity. The exporting of the information itself is not SOX-protected activity, and there are no facts alleged that plausibly suggest that any of the exported information related to securities or shareholder fraud, as opposed to nuclear safety and regulatory concerns. The lack of any connection to SOX-related fraud is evidenced by Plaintiff's inclusion of paragraph 43 under the heading of protected activity in support of his third ERA claim—not his new SOX claim. (Supp. Compl., Section VI.C.)

In paragraph 44 of the Supplemental Complaint, Plaintiff alleges that his prior nuclear safety reports and disclosures "indicated" that ExGen made false claims to the Illinois legislature for passage of the FEJB. The choice of the word "indicated" is intentional and implicitly concedes that Plaintiff's reports are insufficient to state a SOX claim. Plaintiff is not alleging (because he cannot do so) that he specifically reported or disclosed any false claims that ExGen

---

U.S.C. § 1514A(b)(2)(D) (establishing 180-day limitation period for filing such a complaint). Any effort to recast these allegations as a SOX claim is also time-barred.

allegedly made to the Illinois legislature. Instead, he is asserting that his safety-related complaints somehow, in retrospect, "indicated" that ExGen had made false claims to the legislature. And he still does not link the alleged false claims to disclosures he made about securities or shareholder fraud. As in *Verfuerth*, Plaintiff's theory "stretches the language and purpose of Sarbanes-Oxley beyond what the statute can bear." 879 F.3d at 793 (rejecting plaintiff's claim that his complaints about managerial decisions amounted to him "(implicitly) telling board members that the failure to disclose his grievances to [defendant's] shareholders amounted to securities fraud.").

Paragraph 45 of the Supplemental Complaint merely alleges, in conclusory fashion, that Plaintiff's disclosures "implicated significant financial, regulatory and political consequences" in addition to "the threat to health and safety." The Supplemental Complaint contains no facts identifying the alleged disclosures; to whom they were made; the nature, extent or materiality of any of the alleged financial or regulatory consequences; how they establish a securities law violation; or that Plaintiff framed any of his alleged disclosures as SOX violations when he made them. And it is apparent from the allegations in paragraphs 17-41 of the Supplemental Complaint that he did not do so. Without these required facts, the additional allegation in paragraph 45 – that ExGen "knew of these issues" and their potential impact on its ability to operate Quad Cities for another 10 years – does nothing for Plaintiff's SOX claim. It is precisely the type of speculation and conjecture rejected in *Verfuerth*. 897 F.3d at 794.

The plaintiff in *Gauthier* similarly argued that the defendants' falsification of reports and failure to properly monitor their steel suppliers constituted fraud against shareholders because such violations of the ERA and NRC regulations "could have a substantial financial impact on the company" such that disclosure of the violations would be required as a material fact relating to finances. But the court rejected this argument because "[e]ven if Defendant's behavior rose to

the level of a material fact," the complaint "reflects that [the plaintiff] held no objective or subjective belief that his employer's conduct related to a relevant securities violation …" 2012 WL 6043012, at *6 and at fn. 3. Instead, "[p]laintiff's concern was safety." *Id*., at *6. The Supplemental Complaint shows the same is true here. And again, *Verfuerth* precludes this kind of "artful recharacterization" of safety claims as securities fraud claims.

Paragraph 46 of the Supplemental Complaint alleges that passage of the FEJB favorably influenced Exelon's perceived shareholder value and actual stock price. Whether true or not, this allegation does not add any of the missing facts needed to state a SOX claim under *Verfuerth*. Among other things, it does not connect any of Plaintiff's alleged reports or disclosures to ExGen's alleged misrepresentations or to Exelon Corporation's stock values. As such, the fact that the FEJB may have influenced shareholder value and stock prices provides no support for Plaintiff's purported SOX claim.

Paragraphs 68 and 111 actually confirm that Plaintiff is improperly attempting to convert complaints about nuclear safety into complaints about shareholder fraud, and that Plaintiff's belated claim that he was reporting SOX violations is not objectively reasonable. Paragraph 68 alleges, in conclusory fashion, that "Plaintiff has been disclosing the Defendants' persistent and material misrepresentations to the public and regulators as to the safety and financial viability of ExGen." But it does not identify any reports or disclosures by Plaintiff related to the alleged material misrepresentations other than the *safety-related* complaints referred to in paragraphs 17-41. Furthermore, it does not include any of the factual detail that *Verfuerth* requires to plead a fraud-based SOX claim: "material misrepresentation or omission, scienter, [shareholder] loss, and [causation]." 879 F.3d at 794. Paragraph 111 of the Supplemental Complaint is similarly deficient as it does nothing more than incorporate all of Plaintiff's *safety-related* complaints to OSHA as a basis for his SOX claim.

In sum, Plaintiff nowhere alleges he disclosed securities or shareholder fraud. The only disclosures alleged are safety-related complaints, which, even when involving alleged falsifications, are not SOX-protected activity. Under *Verfuerth*, and similar holdings in *Day* and *Bishop*, the Supplemental Complaint lacks the basic elements of a securities fraud claim, and Plaintiff's effort to transform his safety-related complaints into a SOX violation stretches the language and purpose of SOX too far. As a matter of law, Plaintiff has failed to plausibly plead that he engaged in protected activity under SOX or that he subjectively and objectively believed that he did so. The Second Federal Claim in the Supplemental Complaint should be dismissed.

C.      **Plaintiff's Reporting of an Alleged SEC Rule Violation Does Not Save His Sox Claim**

SOX-protected activity may include reporting a "violation of any rule or regulation of the SEC." 18 U.S.C. §1514A(a). Plaintiff alleges that on July 22, 2020, he sent an email stating "[m]y understanding is that the NRC, SEC and DOL prohibit companies from enforcing confidentiality provisions that chill the responsible flow of information that regulators and concerned parties need." (Suppl. Compl. ¶ 74.) Even assuming *arguendo* that this allegation implicates an SEC rule or regulation, it does not save Plaintiff's SOX claim. In *Bishop,* the court concluded that "[t]he phrase 'relating to fraud against shareholders' in [§1514(a)(1)] must be read as modifying each item in the series, including 'rule or regulation of the [SEC].'" 2006 WL 1460032, at *9 [internal citations omitted]. In other words, to state a claim under SOX, even a report of a violation of a rule or regulation of the SEC must involve fraud. Nothing in Plaintiff's July 22nd email or any of his prior reports or disclosures alleged fraud of any kind, let alone securities or shareholder fraud prohibited by SOX or SEC rules.

More importantly, the July 22, 2020 email cannot save Plaintiff's SOX claim because that email post-dates *all* of the alleged adverse actions set forth in the Supplemental Complaint.

The July 22, 2020 email is the only concern Plaintiff expressed that references the SEC or any conduct even arguably prohibited by SOX. And Plaintiff submitted the July 22nd email *after* and in response to the alleged SOX-related adverse actions: Defendants' alleged targeted investigation of Plaintiff, which he learned about on June 2, 2020 (¶71); Defendants' alleged failure to respond to Plaintiff's July 9, 2020 email asking for evidence of his alleged violations (¶73); and Defendants' alleged threat to terminate Plaintiff if he did not sign the Attestation he received on July 9, 2020 (¶¶ 76-77). Because the July 22nd email came after these alleged adverse actions, it could not have been a "contributing factor" for them and cannot provide the basis for a SOX retaliation claim. *See Fuqua v. SVOX AG et al.,* 2014 WL 3811047 *5 (N.D. Illinois, Aug. 1, 2014), citing 29 C.F.R. §1980.104(e)(2).

## V. <u>CONCLUSION</u>

For the reasons stated above, ExGen requests that Plaintiff's Second Federal Claim be dismissed with prejudice.

Respectfully submitted,

**CONSTELLATION ENERGY GENERATION, LLC (formerly known as EXELON GENERATION COMPANY, LLC)**

By: /s/   Richard R. Winter_____
   One of Its Attorneys

Kenneth A. Jenero (ARDC # 3127217)
Richard R. Winter (ARDC # 6195210)
HOLLAND & KNIGHT, LLP
151 N. Riverside Plaza, Suite 2700
Chicago, IL  60606
312-263-3600
kenneth.jenero@hklaw.com
richard.winter@hklaw.com

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned attorney certifies that on **April 5, 2022**, he electronically filed the foregoing **Defendant Constellation Energy Generation, LLC's Memorandum of Law in Support of Rule 12(b)(6) Motion to Dismiss Plaintiff's "Second Federal Claim: Discrimination in Violation of the Sarbanes Oxley Act"** with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

_____*/s/ Richard R. Winter* ____