IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| BRIAN MAGNUSON,<br><br>Plaintiff,<br><br>v.<br><br>EXELON CORPORATION and<br>EXELON GENERATION COMPANY, LLC<br><br>Defendants. | Case No. 1:21-cv-04142<br><br>Hon. Sara Darrow<br>Magistrate Judge Jonathan E. Hawley |

### DEFENDANT EXELON CORPORATION'S
### MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS

Brian O. Watson
Lucas T. Rael
RILEY SAFER HOLMES & CANCILA LLP
70 W. Madison St., Suite 2900
Chicago, Illinois 60602
(312) 471-8700
bwatson@rshc-law.com
lrael@rshc-law.com

*Attorneys for Defendant Exelon Corporation*

Exelon Corporation is the wrong party for this employment dispute. As Plaintiff Brian Magnuson ("Magnuson") admits, his employer was Exelon Generation Company, LLC ("ExGen"), not Exelon Corporation.[1] As Magnuson also concedes and public records confirm, Exelon Corporation was the mere parent company of ExGen. It has no employees. And it did not own or operate the Quad Cities Nuclear Generation Station where Magnuson claims retaliation from his alleged reporting of nuclear safety concerns to ExGen management, the Nuclear Regulatory Commission, and the Occupational Safety and Health Administration.

Indeed, Magnuson alleges no facts showing that Exelon Corporation ever retaliated against him related to his employment with ExGen. Instead, more than two years into this employment dispute with ExGen, Magnuson seeks to tack on two defective claims against Exelon Corporation as the former publicly traded parent company of ExGen. The first is for alleged retaliation in violation of the Sarbanes-Oxley Act, 18 U.S.C. § 1514A ("SOX"). The second is for alleged common law retaliatory discharge under Illinois law. Both claims fail as a matter of law.

*First*, Magnuson cannot maintain a SOX whistleblower claim against Exelon Corporation because he was never an employee of Exelon Corporation. SOX protects whistleblowers by restricting an *employer's* ability to "discharge, demote, suspend, threaten, harass, directly or indirectly, or in any other manner discriminate against *an employee* . . . ." 18 U.S.C. § 1514A(a)

---

[1] On February 1, 2022, Exelon Corporation separated Constellation Energy Corporation ("Constellation") and its consolidated subsidiaries, including Exelon Generation Company, LLC, from Exelon Corporation by distributing all shares of Constellation stock to Exelon's shareholders. At that time, Exelon Generation Company, LLC changed its name to Constellation Energy Generation, LLC. Form 10-K, Constellation Energy Corp., Dec. 31, 2021, *available at* www.sec.gov/edgar/browse/?CIK=1868275. Because Magnuson refers to Exelon Generation Company, LLC as "ExGen" in his pleading, this memorandum has conformed simply for the Court's ease of reference.

1

(emphasis added). Magnuson admits that he was an employee of ExGen, not Exelon Corporation.

*Second*, even if Magnuson could assert a SOX whistleblower claim as a non-employee, he does not plead facts supporting the elements of this claim. Magnuson alleges nothing showing that Exelon Corporation ever committed securities violations relating to fraud against shareholders (*i.e.*, securities fraud) or that Magnuson objectively and reasonably believed that it had. Nor does Magnuson allege that he ever reported any securities fraud to Exelon Corporation or that any reporting resulted in retaliation by Exelon Corporation. Magnuson also does not allege that he suffered an unfavorable personnel action by Exelon Corporation.

*Third*, Magnuson does not plead any facts to establish a common law retaliatory discharge claim against Exelon Corporation because he was not actually discharged, let alone by Exelon Corporation. At most, Magnuson alleges that he was temporarily laid off by ExGen. That allegation falls far short of a common law retaliatory discharge claim under Illinois law.

Exelon Corporation therefore should be dismissed with prejudice.

## RELEVANT FACTUAL ALLEGATIONS

Exelon Corporation is a utility services holding company. *See* Suppl. Compl., ECF 79 ("Compl.") ¶¶ 1, 8.[2] As a holding company, Exelon Corporation has no employees and conducts business operations through its subsidiaries. *Id.*[3] One former subsidiary is ExGen. Compl. ¶¶ 7–

---

[2] Form 10-K, Exelon Corp., Dec. 31, 2021, *available at* sec.gov/edgar/browse/?CIK=1109357. The Court may consider documents referenced in the complaint and may take judicial notice of public records not subject to reasonable dispute. *Tobey v. Chibucos*, 890 F.3d 634, 647–48 (7th Cir. 2018). Additionally, when documents attached to or referenced in a "complaint contradict the allegations of the complaint, the document controls." *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 454 (7th Cir. 1998).

[3] Form 10-K, Exelon Corp., Dec. 31, 2021; *Linsner v. Exelon Corp.*, 2012 IL App (1st) 110753-U, ¶ 4 ("Exelon [Corporation] was formed as a holding company in the late 1990's and has no employees."); *Carpenter v. Exelon Corp.*, No. 14-07-00149-CV, 2007 WL 3071998, at *3 (Tex.

2

8. ExGen operates several nuclear power plants across the country, including the Quad Cities Nuclear Power Station ("Quad Cities Station"). *Id.* ¶ 7. Magnuson is allegedly employed by ExGen and has been for over 33 years. *Id.* ¶¶ 6, 9.

**OSHA Protected Activity.** During his employment at ExGen, Magnuson claims that he observed what he perceived to be safety violations at ExGen's Quad Cities Station. *Id.* ¶¶ 17–42. Each alleged violation concerned nuclear safety and regulatory issues that Magnuson believed actually or potentially violated Nuclear Regulatory Commission ("NRC") rules, regulations, orders, or guidelines. *Id.* ¶¶ 17, 18–30, 32–40. Magnuson claims that he reported these alleged violations to ExGen. *Id.* None of these alleged violations concerned securities fraud. *Id.* And none of these allegations address or even refer to Exelon Corporation. *Id.* ¶¶ 17–41.

**OSHA Adverse Actions.** Magnuson alleges that ExGen placed him on "involuntary leave without pay" on November 2, 2016. *Id.* ¶ 61. But a year later on November 13, 2017, ExGen reinstated Magnuson to employment. *Id.* ¶ 66. Magnuson does not allege that Exelon Corporation had anything to do whatsoever with the decision to place him on involuntary leave. Nevertheless, based on these allegations, Magnuson asserts that "Defendants" committed common law retaliatory discharge under Illinois law. *Id.* ¶¶ 152–59.

**SOX Protected Activity.** Magnuson separately claims—with no stated connection to his prior allegations against ExGen—that he complained to ExGen "that Exelon made false claims to the Illinois legislature." *Id.* ¶ 44. Magnuson alleges that "Exelon" made "commitments" to the Illinois legislature about the Quad Cities Station in connection with the passage of the Future Energy and Jobs Bill. *Id.* ¶¶ 44–46. Magnuson alleges that "Exelon committed to keeping Quad

---

App. Oct. 23, 2007) ("Exelon is a holding company with no employees or business operations of any type.").

3

Cities . . . open for another 10 years in exchange for legislative subsidies." *Id.* ¶ 44. According to Magnuson, this "commitment" was reported by "the media," though Magnuson admits that it was not incorporated into the bill. *Id.* Magnuson then claims the safety concerns he complained about separately to ExGen "threaten the ability to operate the Quad Cities Station for another 10 years." *Id.* ¶ 45. Again, Magnuson alleges no reported securities fraud. *Id.* ¶¶ 44–46.

**SOX Adverse Actions.** Magnuson claims that he was subject to a "targeted investigation" by "Defendants" as a result of his complaints. *Id.* ¶ 71. But Magnuson does not even try to distinguish between the alleged conduct of ExGen, his employer, and Exelon Corporation. *Id.* ¶¶ 71–78. Indeed, Magnuson then claims that "Defendants attempted to coerce Plaintiff into accepting EXC's [Exelon Corporation's] violations of his whistleblower rights under the [Energy Reorganization Act] ERA and NRC rules, and under SEC Rule 21F-17, by launching an ethics investigation against him and demanding he sign a gag provision in which he was ordered to confess that he exported for his lawyers and regulators relevant ExGen documents." *Id.* ¶ 72. Magnuson alleges that he submitted a "signed revised version of the Attestation and asserted his right to export documents" to his attorneys. *Id.* ¶ 77.

Magnuson claims that he responded to this investigation with a July 9, 2020 email asking for evidence of the "alleged violation, policy clarifications, and his concerns with safety." *Id.* ¶¶ 71, 73. Magnuson alleges that he received no reply to his email. *Id.* ¶ 74. Magnuson then allegedly replied with a July 22, 2020 email:

> My understanding is that the NRC, SEC, and DOL prohibit companies from enforcing confidentiality provisions that chill the responsible flow of information that regulators and concerned parties need. Obviously, the company's recent warnings and admonitions to me have the effect of ordering me not provide [sic] critical information and documents to regulators and law enforcement agencies directly or through my attorneys.

*Id.* ¶ 74.

4

**LEGAL STANDARD**

To survive a Rule 12(b)(6) motion, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell. Atl. Corp. v Twombly*, 550 U.S. 544, 570 (2007)).[4] A complaint satisfies this standard when its factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555–56. When deciding a motion to dismiss under Rule 12(b)(6), the court takes all facts in the plaintiff's favor, although conclusory allegations that merely recite the elements of a claim are not entitled to this presumption of truth. *Iqbal*, 556 U.S. at 662, 663. In deciding a Rule 12(b)(6), a court may take judicial notice of matters of public record without converting a motion to dismiss into one of summary judgment. *Gen. Elec. Cap. Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997).

**ARGUMENT**

I.  **Magnuson Cannot Maintain a SOX Whistleblower Claim Against Exelon Corporation Because He Was Never an Employee of Exelon Corporation.**

By its plain text, SOX creates a civil action to protect against retaliation from an *employer* that "may discharge, demote, suspend, threaten, harass, directly or indirectly, or in any other manner discriminate against *an employee* . . . ." 18 U.S.C. § 1514A(a) (emphasis added). Here, because Magnuson admits that he was an employee of ExGen, not Exelon Corporation, Magnuson cannot maintain a SOX whistleblower claim against Exelon Corporation.

---

[4] On February 1, 2022, the Court allowed Magnuson the opportunity to supplement his complaint and add Exelon Corporation as a party. ECF No. 78. That ruling is not dispositive. First, the Court's order was an exercise of "broad discretion" based upon the standard in Rule 15(d) "to *liberally* allow amendment." *Id.* at 4. Second, Exelon Corporation raises independent grounds for dismissal that were not raised by ExGen. Third, Rule 12(b)(6) applies a higher standard than that of Rule 15(d), and the Court has not previously evaluated the merits of Exelon Corporation's arguments under that standard.

As courts in this circuit and nationwide have held, there must be an employment relationship between plaintiff and defendant to state a SOX whistleblower claim. *See, e.g.*, *Gyrga v. Henkles & McCoy Grp., Inc.*, No. 19 C 1276, 2019 WL 3573565, at *5 (N.D. Ill. Aug. 6, 2019); *Moody v. Am. Nat'l Ins. Co.*, 466 F. Supp. 3d 727, 730–31 (S.D. Tex. 2020), *aff'd*, 842 F. App'x 875 (5th Cir. 2021); *Lawrence v. Int'l Bus. Mach. Corp.*, No. 12cv8433(DLC), 2017 WL 3278917, at *5–6 (S.D.N.Y. Aug. 1, 2017). The facts in *Gyrga* are particularly instructive. There, a plaintiff filed a SOX whistleblower claim against his former employer as well as his former employer's parent company. *Gyrga*, 2019 WL 3573565, at *1. The plaintiff's employer worked as a contractor for a third-party, publicly traded company, and was therefore subject to SOX. *Id.* Plaintiff alleged that he learned that several executives of his employer were defrauding the publicly traded corporation and that he was fired after trying to reveal this fraud. *Id.* at *1–2. On a motion to dismiss filed by the parent company, the court held that plaintiff could not maintain his claim against the parent company because that company was not his employer. *Id.* at *5. In explaining its holding, the court noted that "the amended complaint varyingly refers to a single defendant (when referring to [plaintiff']s employment and employer) and defendants, plural, but does not describe specific conduct of [the parent company] that would serve as a basis for any of [plaintiffs'] claims." *Id.* at *5.

Likewise, in *Moody*, the plaintiff brought a SOX whistleblower claim alleging that the defendant insurance company had cancelled his contract after he complained of alleged securities violations to the defendant's board of directors. 466 F. Supp. 3d at 730–31. The defendant moved to dismiss the claim and the court agreed because plaintiff was not an employee of defendant: "in SOX-retaliation claims[] there must be an employment relationship between the SOX-retaliation claimant and defendant." *Id.* (citing *Lawson v. FMR LLC*, 571 U.S. 429, 443

(2014)). Because the plaintiff there had "never unequivocally assert[ed] that he was employed by" the defendant, his SOX whistleblower claim failed. *Id.* at 731.

In *Lawrence*, too, the court rejected a plaintiff's attempt to assert a SOX whistleblower claim against a parent company. 2017 WL 3278917, at *5–6. There, plaintiff sued his former employer and its parent company on a SOX whistleblower claim. Plaintiff did not allege that the parent company was his "employer," and instead attempted to rely on "group pleading" against "defendants" to satisfy the elements of his claim. The court rejected this approach and dismissed the SOX whistleblower claim against the parent company. *Id.* ("The SAC largely engages in group pleading, alleging that various actions were taken by the 'defendants.' But group pleading will not suffice to hold a parent corporation liable . . . .").

For the same reasons, Magnuson's SOX whistleblower claim here against Exelon Corporation fails. As with *Moody*, Magnuson never claims that Exelon Corporation was his employer—indeed, the opposite is true because he alleges that ExGen was his employer. And like *Gyrga*, Magnuson's SOX allegations rely on vague, conclusory statements that obscure whether ExGen or Exelon Corporation committed the alleged conduct. And as in *Lawrence*, Magnuson's reliance on "group pleading" against "Defendants" violates federal pleading requirements to show any employment relationship between him and Exelon Corporation. Thus, Magnuson's SOX whistleblower claim should be dismissed as to Exelon Corporation.

**II.      Magnuson Does Not Plead Facts to Support His SOX Whistleblower Claim.**

Magnuson also fails to state a SOX whistleblower claim against Exelon Corporation because he does not—and cannot—allege facts showing the required elements. To state a SOX whistleblower claim, a plaintiff must allege that "(1) she engaged in protected activity; (2) the employer knew that she engaged in the protected activity; (3) she suffered an unfavorable personnel action; and (4) the protected activity was a contributing factor in the unfavorable

7

action . . . ." *Harp v. Charter Commc'ns, Inc.*, 558 F.3d 722, 723 (7th Cir. 2009). Magnuson does not plead any facts that support these elements.

      A.    **Because Magnuson Does Not Plead that He Had an Objectively Reasonable Belief that Exelon Corporation Committed Securities Fraud, He Never Engaged in a Protected Activity Under SOX.**

Magnuson does not plead facts showing that he ever engaged in a SOX protected activity. In relevant part, SOX protects employees that "provide information, cause information to be provided, or otherwise assist in an investigation regarding any conduct which the *employee reasonably believes* constitutes a violation of . . . any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law *relating to fraud against shareholders* . . . ." 18 U.S.C. § 1514A(a)(1) (emphasis added). That "reasonableness [of an employee's belief] must be scrutinized under both a subjective and objective standard." *Harp*, 558 F.3d at 723.

Nowhere does Magnuson allege facts to show that he had an *objectively* reasonable belief that Exelon Corporation ever committed securities violations relating to fraud against shareholders (*i.e.*, securities fraud). Instead, everything that Magnuson allegedly reported or disclosed to ExGen or government regulators, as stated in the Supplemental Complaint, concerned safety issues that allegedly violated rules, regulations, orders, or guidelines—*nothing* about securities fraud. Compl. ¶¶ 17, 18–30, 32, 33, 34, 25–37, 38, 39–40. In fact, the word "fraud" does not appear anywhere in the 159-paragraph Supplemental Complaint, other than in paragraph 110, which merely quotes text from the Sarbanes-Oxley Act. *Id.* ¶ 110. Magnuson thus fails to plead with the requisite specificity the "who, what, when, where, and how" of any alleged securities fraud to support his SOX claim. *Cornielsen v. Infinium Cap. Mgmt., LLC*, 916 F.3d 589, 598 (7th Cir. 2019).

**Alleged "Commitment."** In one section of his Supplemental Complaint labeled "OSHA SOX Complaint Protected Activity," Magnuson vaguely alleges that "Exelon" made a

8

"commitment" to the Illinois legislature about the Quad Cities Station in connection with the passage of the Future Energy and Jobs Bill. Compl. ¶¶ 44–46. Magnuson claims—again with no details about the who, what, when, where, and how of this alleged statement—that "Exelon committed to keeping Quad Cities . . . open for another 10 years in exchange for legislative subsidies." *Id.* ¶ 44. But that allegation does not show any securities fraud: Magnuson offers this Court nothing as to the alleged materiality of this representation, the scienter of the unidentified speaker(s), connection between this representation and the purchase or sale of a security, reliance upon this representation, or loss causation. *Cornielsen*, 916 F.3d at 598.

This allegation is a far cry from protected activity under SOX. As the Seventh Circuit has made clear, SOX protects only "employees who reveal evidence of certain types of fraud, such as securities fraud or wire fraud." *Verfuerth v. Orion Energy Sys., Inc.*, 879 F.3d 789, 793–94 (7th Cir. 2018). In *Verfuerth,* the Seventh Circuit specifically rejected the plaintiff's SOX claim because "the practices about which he complained—attorney overbilling, intellectual property disputes, conflicts of interest, and violations of internal company protocol—are not 'fraud' within the meaning of [SOX]." *Id.* Instead, the conduct must be "so significant that its nondisclosure could constitute securities or shareholder fraud." *Id*. at 794. The plaintiff in *Verfeurth* failed to meet this standard because, as here, it was "far from obvious that the conduct of concern to Verfuerth comes anywhere near the level of materiality needed to support a plausible claim of fraud." *Id.* In making that finding, the Seventh Circuit held that "'[t]o have an objectively reasonable belief there has been shareholder fraud, the complaining employee's theory of such fraud must at least approximate the basic elements of a claim of securities fraud . . . includ[ing] material misrepresentation or omission, scienter, [shareholder] loss, and [causation].'" *Id.*

9

Just like the plaintiff in *Verfuerth*, Magnuson's allegation here "stretch[es] the language of Sarbanes-Oxley beyond what the statute can bear." *Id.* First, Magnuson alleges no particularities about any fraudulent "commitment" by Exelon Corporation as to the Quad Cities Station—he does not even allege what the false claims were, when they were made, that he reported them, when or to whom he reported them, shareholder loss, or any other detail required to make out a SOX violation. Compl. ¶ 44. Magnuson also does not allege that Exelon Corporation ever knew that it could not keep the Quad Cities Station operational for ten years, or even that it was likely that the Quad Cities Station would close before the ten-year commitment was up. Magnuson even admits that this purported immaterial "commitment" did not make its way into the bill that was passed. *Id.*

Far from alleging securities fraud, Magnuson vaguely alleges that ExGen and Exelon Corporation only knew of "issues" raised in his OSHA complaints, and that those issues allegedly "threaten[ed] the ability to operate the Quad Cities Station for another 10 years." *Id.* ¶ 45. But again, mere awareness of operational "issues" that could "threaten" the likelihood of the Quad Cities Station remaining open for ten years is precisely the type of speculation and conjecture rejected in *Verfuerth*. 897 F.3d at 794 ("The securities laws do not require companies to notify shareholders about every managerial hiccup or internal policy disagreement.").

**Alleged "Gag Provision."** Separately, in a section of the Supplemental Complaint labeled "Adverse Actions under Third OSHA ERA Complaint and SOX Complaint," Magnuson also alleges that "Defendants conducted a targeted investigation" against him and required him to "sign a gag provision in which he was ordered to confess that he exported for his lawyers and regulators relevant ExGen documents." Compl. ¶¶ 71–72. Magnuson suggests that asking him to sign this agreement violated SEC Rule 21F-17, which prohibits "tak[ing] any action to impede

10

an individual from communicating directly with the Commission staff about a possible *securities law violation*, including enforcing, or threatening to enforce, a confidentiality agreement." 17 CFR § 240.21F-17 (emphasis added).

      That allegation does not identify any securities law violation that could support a SOX whistleblower claim. Magnuson alleges nothing about what possible securities laws purportedly were violated, or what information he allegedly provided about a possible securities law violation. Indeed, Magnuson does not allege that asking him to sign the confidentiality agreement related in any way to securities fraud. And merely alleging a possible violation of an SEC rule or regulation, like SEC Rule 21F-17, with no alleged securities fraud, does not satisfy the requirements of a SOX whistleblower claim because SOX only protects employees who have a reasonable belief that there has been a violation "relating to fraud against shareholders." 18 U.S.C. § 1514A(a); *Bishop v. PCS Admin. (USA), Inc.*, No. 05 C 5683, 2006 WL 1460032, at *9 (N.D. Ill. May 23, 2006) ("The phrase 'relating to fraud against shareholders' in [§ 1514(a)(1)] must be read as modifying each item in the series, including "rule or regulation of the Securities and Exchange Commission."); *Brooks v. Agate Res., Inc.*, No. 6:15-cv-00983-MK, 2019 WL 2635594, at *20–21 (D. Or. Mar. 25, 2019) (rejecting SOX claim based on Rule 21F-17 because "Plaintiff alleges no other details or information about what securities laws purportedly were violated").

      Simply put, Magnuson does not plead any facts to support that Exelon Corporation engaged in securities fraud. Thus, Magnuson fails to allege the first element of his SOX whistleblower claim.

**B.      Magnuson Does Not Plead That Exelon Corporation Knew He Engaged in a Protected Activity Because He Did Not Report Securities Fraud to Exelon Corporation.**

Magnuson also does not sufficiently plead the second element of a SOX whistleblower claim because he does not allege that he ever reported any alleged securities fraud to Exelon Corporation. *Harp*, 558 F.3d at 723. Magnuson merely alleges that on July 22, 2020, he sent an email stating that "[m]y understanding is that the NRC, SEC and DOL prohibit companies from enforcing confidentiality provisions that chill responsible flow of information that regulators and concerned parties need." Compl. ¶ 74.

But this alleged email says nothing of any "commitment" to keep the Quad Cities Station open that supposedly justifies his SOX claim. *Id.* In fact, at no point does Magnuson ever allege that he reported to either Exelon Corporation or ExGen any securities fraud at all. *Id.* ¶¶ 1–159. Magnuson's allegations are merely an after-the-fact attempt to "stretch the language of Sarbanes-Oxley" in order to sue Exelon Corporation as the former publicly traded parent company of ExGen. *Verfuerth*, 879 F.3d at 794.

At bottom, Magnuson's alleged statement that "enforcing confidentiality provisions chill the responsible flow of information to regulators," including the SEC under SEC Rule 21F-17, does not implicate any securities fraud whatsoever, and therefore cannot constitute a report of securities fraud to support a SOX claim. *Id.*; *Bishop*, 2006 WL 1460032, at *9.

**C.      Magnuson Does Not Plead that He Suffered an Unfavorable Personnel Action Against Exelon Corporation.**

Magnuson also does not allege any facts to show that he suffered an unfavorable personnel action by Exelon Corporation because he does not allege that Exelon Corporation retaliated against him. Instead, Magnuson claims that in June 2020, he experienced a "targeted investigation" by "Defendants." Compl. ¶ 71. He further alleges that "Defendants" threatened

12

him with disciplinary action and that "Defendants restricted [his] access to company information." *Id.* ¶¶ 76, 78. None of these allegations shows what Exelon Corporation did (or did not do) that affected his employment with ExGen and instead relies on impermissible "collective pleading." *Lawrence*, 2017 WL 3278917, at *5–6.

Moreover, Magnuson cannot point to any conceivable personnel action that is tied to SOX protected activity. Even if one assumed that his July 22, 2020 email was a protected activity, which it is not, this email post-dates the alleged threats of disciplinary action or restricted access to company information. Compl. ¶¶ 71–77. Every alleged action—the targeted investigation, which Magnuson learned about on June 2, 2020, *id.* ¶ 71, the alleged failure to respond to his July 9, 2020 email, *id.* ¶ 73, and the alleged threat of termination on July 9, 2020, *id.* ¶¶ 76–77—all occurred before the July 22, 2020 email. Thus, Magnuson's July 22, 2020 email could not have been a contributing factor to any alleged adverse action. *See, e.g.*, *Boyd v. Accuray, Inc.*, 873 F. Supp. 2d 1156, 1170–71 (N.D. Cal. 2012) (plaintiff's SEC complaint was not a contributory factor to his termination because the decision to terminate plaintiff was made before the SEC complaint was filed).

Accordingly, because Magnuson does not allege any facts to establish each of the elements of a SOX whistleblower claim, the Court should dismiss the claim against Exelon Corporation under Rule 12(b)(6).

### III. Magnuson Does Not Plead Facts to Show Common Law Retaliatory Discharge Claim Against Exelon Corporation.

Magnuson's only other claim against Exelon Corporation is a count for common law retaliatory discharge under Illinois law. Compl. ¶ 159 ("Due to *Defendants'* violations of his rights under this count, Plaintiff suffered and will continue to suffer all of the economic and non-economic damages alleged above."). To allege retaliatory discharge, "a plaintiff must show (1)

13

that she has been discharged; (2) in retaliation for her activities; and (3) that the discharge violates a clear mandate of public policy." *Bajalo v. Northwestern Univ.*, 369 Ill. App. 3d 576, 580 (Ill. App. Ct. 2006). As to the first element, "Illinois courts evaluating retaliatory discharge claims have refused to recognize a claim for any injury short of 'actual discharge.'" *Rehfield v. Diocese of Joliet*, 2021 IL 125656, ¶ 27 (citations omitted). "Actual discharge" means "termination of an 'at-will employee'—one whose employment has a nonspecific duration that can be terminated for any reason—not nonrenewal of a fixed-term employment contract." *Id.*

But Magnuson does not allege that he was actually discharged, let alone by Exelon Corporation, which, indisputably, was never his employer. At most, Magnuson alleges a temporary dismissal by ExGen or, at a minimum, a separation that was not permanent by ExGen. Compl. ¶¶ 60–63. Therefore, because Magnuson does not allege a discharge that completely and finally terminates his employment relationship with ExGen, let alone the parent company, Exelon Corporation, *see Herman v. Power Maint. & Constructors, LLC*, 388 Ill. App. 3d 352, 363 (2009), his claim for common law retaliatory discharge fails.

**IV.    Magnuson Does Not Plead Any Other Claims Against Exelon Corporation.**

As far as Exelon Corporation can tell, the remaining counts in Magnuson's Supplementary Complaint are asserted only against ExGen. Compl. ¶¶ 89–101 (First Federal Claim against "ExGen"); *id.* ¶¶ 130–35 (State Law Count 1 against "ExGen"); *id.* ¶¶ 136–41 (State Law Count 2 against "ExGen"); *id.* ¶¶ 142–51 (State Law Count 3 against "ExGen"). If improperly directed against Exelon Corporation, the claims should be dismissed because it is impossible to figure out which facts may be relevant to which claims against Exelon Corporation, if any. That failure is "exactly the type of 'kitchen sink approach to pleading'" that requires dismissal. *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 947 (7th Cir. 2013); *United States ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 376–79 (7th Cir. 2003);

14

*Deschepper v. Midwest Wine & Spirits, Inc.*, 84 F. Supp. 3d 767, 783 (N.D. Ill. 2015) ("shotgun" pleading "make it 'virtually impossible to know which allegations of fact are intended to support which claim(s) for relief'" (citing *CustomGuide v. CareerBuilder, LLC*, 813 F. Supp. 2d 990, 1001 (N.D. Ill. 2011))).

## CONCLUSION

For these reasons, Defendant Exelon Corporation requests that the Court dismiss Exelon Corporation with prejudice.

Dated: April 5, 2022      Respectfully submitted,

By:    */s/ Brian O. Watson*

Brian O. Watson
Lucas T. Rael
RILEY SAFER HOLMES & CANCILA LLP
70 W. Madison St., Suite 2900
Chicago, Illinois 60602
(312) 471-8700
bwatson@rshc-law.com
lrael@rshc-law.com

*Attorneys for Defendant Exelon Corporation*

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that on April 5, 2022, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

<em>/s/Brian O. Watson</em>

4860-3882-8569, v. 11